UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
GOLD COAST TRANSPORTATION SERVICE
LLC, *et al.*,

                Plaintiffs,

     -against-

NTI-NY, INC., *et al.*,

                Defendants.
----------------------------------------------------------------X

**REPORT AND RECOMMENDATION**
21-CV-05396 (DRH) (JMW)

**A P P E A R A N C E S:**

**Rodman E. Honecker**
Windels Marx Lane & Mittendorf, LLP
120 Albany Street Plaza
New Brunswick, New Jersey 08901
*Attorney for Plaintiffs*

**Timothy J. Keane and Debra E. Seidman**
Quirk and Bakalor, P.C.
1205 Franklin Avenue
Suite 110
Garden City, New York 11530
*Attorneys for Defendants*

**WICKS,** Magistrate Judge:

      This case involves a transportation business venture gone awry. Plaintiffs Gold Coast Transportation Service LLC ("Gold Coast"), Josephine Herrschaft, and Anthony Herrschaft (collectively the "Herrschafts") commenced this action in state court against Defendants National Transportation, Inc. ("NTI"), James Gleich, John Kindt, Amy Wills, Rich Nolan, and Marc A. Jacobi, as well as nominal Defendant NTI-NY, seeking a declaratory judgment that Plaintiffs own a majority stake in Defendant NTI-NY and alleging that the individual Defendants have committed a litany of corporate misdeeds.

      Defendants removed the action to this Court on September 29, 2021. After filing their amended complaint, Plaintiffs filed the instant motion to remand back to state court based on a perceived lack of subject matter jurisdiction. Defendants oppose that motion, insist jurisdiction here is proper and wish to

proceed in this venue. On January 31, 2022, the Honorable Denis R. Hurley referred Plaintiffs' motion to remand to the undersigned for a Report and Recommendation. For the reasons that follow, the undersigned respectfully recommends that Plaintiffs' motion for remand be granted.

## I. BACKGROUND

The following allegations are drawn from the amended complaint. Defendant NTI-NY is a Nevada corporation that provides ground transportation to airline crews in the New York Metropolitan area. (DE 16 ¶¶ 6–10.) Plaintiff Gold Coast, a limited liability company, is a shareholder of Defendant NTI-NY. (DE 5 ¶ 1.) Plaintiffs the Herrschafts are the two members of Gold Coast. (*Id.* ¶ 17.) The only other shareholder of Defendant NTI-NY is Defendant NTI, also a Nevada corporation. (*Id.* ¶ 5.)

Plaintiffs, who have extensive experience providing ground transportation services in the New York Metropolitan area, allegedly made a $500,000.00 loan to Defendant NTI to help Defendants Gleich and Kindt, owners of Defendant NTI, keep their business afloat. (*Id.* ¶¶ 20, 23–24.) After announcing their intent to cease operations of their prior transportation business, Golden Touch, Plaintiffs developed a plan to push business to Defendant NTI given their vested interest—the $500,000.00 loan—in seeing Defendant NTI succeed. (*Id.* ¶ 27.) Without informing Plaintiffs, Defendant Gleich allegedly incorporated NTI-NY, naming himself President, Defendant Kindt Secretary, and himself, Defendant Kindt, and Plaintiff Josephine Herrschaft as directors. (*Id.* ¶ 28.) Immediately following the incorporation of Defendant NTI-NY, the parties disputed which entity—Defendant NTI or Plaintiff Gold Coast, the two shareholders of the newly formed corporation—owned the majority stake. (*Id.* ¶¶ 29–32; *see* DE 9 ¶¶ 29–32.) Plaintiffs allege that the parties did agree, however, that Plaintiffs would have access to all of the corporation's financial information. (DE 5 ¶ 34.) Plaintiffs further allege that, after they secured service contracts through their business contacts for Defendant NTI-NY, Defendants Gleich and Kindt engaged in a series of "bad acts and self-dealing," including, among other things, siphoning the corporation's funds, misdirecting business opportunities away from the corporation for the benefit of Defendant NTI, and denying Plaintiffs access to the books and records of the corporation. (*Id.* ¶ 38.)

2

Based on Defendants' alleged corporate misdeeds, Plaintiffs commenced this action in New York State Supreme Court in Nassau County by filing their verified complaint. (DE 1-2.) On September 29, 2021, Defendants timely removed the case to this Court on diversity of citizenship grounds. (DE 1.) After filing an amended complaint (DE 5), Plaintiffs moved to remand this matter to state court, contending that this Court lacks subject matter jurisdiction because (1) Defendant NTI-NY is a citizen of New York based on its business activity in the state; (2) Defendant NTI-NY should be realigned as a plaintiff for diversity purposes; and (3) Defendant Wills, added as a defendant in the amended complaint, is a citizen of New York. (*See generally* DE 13-8.) Defendants oppose the motion to remand and seek to defend this litigation in federal court. (DE 17.) On January 31, 2022, the Honorable Denis R. Hurley referred Plaintiffs' motion to remand to the undersigned for a Report and Recommendation. (Electronic Order dated Jan. 31, 2022.) For the reasons that follow, the undersigned respectfully recommends that Plaintiffs' motion to remand be granted.

## II. LEGAL STANDARD

It is axiomatic that federal courts are of limited jurisdiction and "possess[] only that power authorized by Constitution and statute." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Federal courts generally therefore may entertain cases falling into two subject matter categories: cases involving a federal question, 28 U.S.C. § 1131, and cases where parties are citizens of different states and the amount in controversy exceeds $75,000, 28 U.S.C. § 1132. "It is to be presumed that a cause lies outside this limited jurisdiction and the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen*, 511 U.S. at 377 (internal citations omitted). Where, as here, an action is removed to federal court based on diversity of citizenship jurisdiction, "'complete diversity'" must exist, meaning that "all plaintiffs must be citizens of states diverse from those of all defendants." *Pa. Pub. Sch. Emps.' Ret. Sys. v. Morgan Stanley & Co.*, 772 F.3d 111, 117–18 (2d Cir. 2014) (citing *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546, 553 (2005)).

Where an action is removed and the removal is challenged, the burden rests with the removing party to establish that federal subject matter jurisdiction exists, keeping in mind that the "'federal courts

3

construe the removal statute narrowly, resolving any doubts against removability.'" *Ferreira v. N.Y. Daily News*, No. 08-CV-1520 (RRM)(MDG), 2009 WL 890577, at *2 (E.D.N.Y. Mar. 31, 2009) (quoting *Thomas v. Baldwin*, 189 F. Supp. 2d 1, 2 (E.D.N.Y. 2002)); *see Percy v. Oriska Gen. Contracting*, 20-cv-6131 (NGG), 2021 WL 2184895, at *5 (E.D.N.Y. May 27, 2021) ("On a motion to remand to state court, 'the burden falls squarely upon the removing party to establish its right to a federal forum by competent proof.'") (citation omitted). In such cases, the removing party bears the burden of establishing that jurisdiction exists by a preponderance of the evidence. *Manney v. Intergroove Media GMBH*, No. 13 CV 0053(SJF)(GRB), 2013 WL 4495190, at *5 (E.D.N.Y. Aug. 19, 2013). To determine whether subject matter jurisdiction exists, courts may consider proffered evidence and sworn declarations so long as such evidence does not merely provide self-serving legal conclusions. *Signature Fin. LLC v. Chi. Elite Cab Corp.*, 2:16-cv-6063 (DRH)(SIL), 2018 WL 1385896, at *5 (E.D.N.Y. Mar. 19, 2018) (Hurley, J.).

### III. DISCUSSION

#### A. *NTI-NY's Principal Place of Business*

In support of their motion for remand, Plaintiffs first argue that complete diversity does not exist because Defendant NTI-NY is a citizen of New York based on its "deep and substantive connection to New York." (DE 13-8 at 7.) Defendants counter that complete diversity exists because Defendant NTI-NY's principal place of business "is in Nevada or perhaps Nevada, California[,] and Texas, but not New York." (DE 17 at 8.) In other words, the parties dispute Defendant NTI-NY's citizenship based on the location of its principal place of business.[1]

"A corporation is deemed to be a citizen of the state in which it is incorporated and of the state or foreign state where it has its principal place of business." *Palmiotti v. JAF Carrier L.L.C.*, 15-CV-2365 (DRH)(ARL), 2017 WL 1166364, at *2 (E.D.N.Y. Mar. 28, 2017) (Hurley, J.). As articulated by the Supreme Court in *Hertz Corp. v. Friend*, a corporation's principal place of business is best understood as its "nerve center," *i.e.*, "the place where a corporation's officers direct, control, and coordinate the

---

[1] The parties do not dispute that Defendant NTI-NY is properly considered a citizen of Nevada given that Nevada is its state of incorporation.

corporation's activities." 559 U.S. 77, 92–93. A corporation's nerve center "*is a single place*" and is ordinarily the entity's headquarters, provided the headquarters are where "the actual center of direction, control, and coordination" of the corporation occurs. *Id.* at 93 (emphasis added). Stated differently, a corporation's nerve center, and thus principal place of business, "is where the lion's share of corporate decision making and direction occurs at the time a lawsuit is initiated, not where corporate decision making may have happened in the past or where it may happen in the future." *Benchmark Invs., Inc. v. PAVmed Inc.*, 20-CV-10888 (VSB), 2021 WL 5967918, at *2 (S.D.N.Y. Dec. 16, 2021) (noting the difficulty in applying the nerve center test in cases involving telecommuting, *i.e.*, where corporations utilize their officers in several different locations).

As a threshold matter, it is worth noting that "[i]n the wake of *Hertz*, the [s]tate in which the corporation has its most extensive contacts or business dealings or the greatest impact on the public is irrelevant to the determination of the corporation's principal place of business." *Greene v. Paramount Pictures Corp.*, 14-CV-1044(JS)(SIL), 2017 WL 4011240, at *3 (E.D.N.Y. Sept. 11, 2017) (internal quotation marks, brackets, and citation omitted). Thus, Plaintiffs' initial reliance in its moving papers on the "place of business" or "public impact" test is misplaced given the Supreme Court's guidance in *Hertz*. *See Greystone Bank v. Tavarez*, No. 09–CV–5192 (SLT), 2010 WL 3311835, at *1 (E.D.N.Y. June 10, 2010) (noting that, after *Hertz*, the state "in which the corporation has its most extensive contacts or business dealings or the greatest impact on the public is irrelevant" to the determination of its citizenship), *report and recommendation adopted as modified by* 2010 WL 3325203 (E.D.N.Y. Aug. 19, 2010). *Au fond,* the nerve center test is now unequivocally the appropriate test in determining a corporation's principal place of business, as Plaintiffs acknowledge in their reply. (DE 19 at 8.)

In support of their opposition, Defendants submit the Declaration of Defendant Marc A. Jacobi (the "Jacobi Declaration"), the Chief Financial Officer ("CFO") of Defendants NTI and NTI-NY. (DE 16 ¶ 6.) The Jacobi Declaration makes clear that both Defendants NTI and NTI-NY are headquartered in Nevada where all of their "legal functions" are carried out. (*Id.* ¶¶ 9, 14.) However, Defendant Jacobi's duties as CFO are admittedly performed in his home state of Texas (*id.* ¶ 9), and each of Defendant NTI-NY's

5

"officers have maintained their respective offices only in Nevada, California[,] and Texas, but not New York" (*id.* ¶ 18). Moreover, all auditing, accounting, primary cash management, and document storage for the entity occurs in Nevada, California, and Texas. (*Id.* ¶¶ 15–16.) While it does not maintain an office in New York, Defendant NTI-NY conducts "occasional meetings" in New York at the office space of Luxury, an independent contractor that provides ground transportation services for Defendant NTI-NY. (*Id.* ¶ 22.)

The question remains, then, whether Defendants have met their burden of establishing Defendant NTI-NY's citizenship based on its principal place of business. Although Defendants have proffered that Defendant NTI-NY is headquartered in Nevada (*id.* ¶ 9), that assertion, without more, is insufficient to establish that Nevada is the state of Defendant NTI-NY's principal place of business. *See Hertz*, 559 U.S. at 93 (noting that a corporation's nerve center is normally where it maintains its headquarters "*provided* that the headquarters is the actual center of direction, control, and coordination . . . and not simply an office where the corporation holds its board meetings") (emphasis added).

Rather than submit evidence establishing a single state where its officers direct, coordinate, and control the corporation, Defendants instead offer a hodgepodge of facts that suggest that Defendant NTI-NY's principal place of business could be in Nevada, Texas, California, or even New York. While the officers maintain their offices in Nevada, Texas, and California (DE 16 ¶ 18) and all auditing, accounting, primary cash management, and document storage occurs in these states (*id.* ¶¶ 15–16), nothing in the record establishes which of these states, if any, is the single place where the officers direct, control, and coordinate Defendant NTI-NY's activities. *See Benchmark Invs., Inc.*, 2021 WL 5967918 at *2 (noting that "courts have found irrelevant the situs of things like strategic meetings, tax filings, and corporate records, since what matters is the situs from where the corporation's high-level officers and directors oversee and control corporate activities") (internal quotation marks, brackets, and citations omitted); *see also Henry v. Gershan*, 20-CV-6133 (VSB), 2020 WL 7625164, at *3 (S.D.N.Y. Dec. 22, 2020) (holding that defendants could not establish diversity jurisdiction in the absence of information supporting that defendant's officers directed, controlled, and coordinated its activities in the state they claimed). Indeed, while Defendant NTI-NY's officers have had meetings in Nevada and California (DE 16 ¶ 9), they have also "conduct[ed] occasional

6

meetings in New York" (*id.* ¶ 22). Defendants' arguments and proffered evidence run counter to the Supreme Court's guidance in *Hertz*, which makes clear that a corporation may have only one principal place of business. 559 U.S. at 93 (noting that a principal place of business must be "a single place"). And, contrary to Defendants' contentions, the fact that Defendant NTI-NY "has no physical office" in New York (*id.*) is of no moment if its officers make the corporation's management decisions out of the state. *See, e.g.*, *Protostorm, Inc. v. Foley & Lardner LLP*, 18-CV-2107 (PKC) (JO), 2019 WL 4094882, at *6 (E.D.N.Y. Aug. 29, 2019) (finding that, contrary to plaintiff's assertion that its principal place of business was Delaware because that is where it was headquartered, plaintiff's principal place of business was in New York where "high-level" decisions were made).

In sum, Defendants have failed to carry their burden in showing, by a preponderance of the evidence, that Defendant NTI-NY's principal place of business is located in a state other than New York, and thus have failed to establish that this Court has subject matter jurisdiction over this dispute. *See, e.g.*, *Channon v. Westward Mgmt., Inc.*, No. 19-cv-05522, 2020 WL 1233766, at *7 (N.D. Ill. Mar. 13, 2020) (granting motion for remand where removing defendants failed to establish the location of its principal place of business); *Pool v. F. Hoffman-La Roche, Ltd.*, 386 F. Supp. 3d 1202, 1220–01 (N.D. Cal. 2019) (same). For that reason, the undersigned respectfully recommends that Plaintiffs' motion for remand be granted.

Out of an abundance of caution, should the district court disagree with the above jurisdictional analysis on the issue of principal place of NTI-NY's business, the undersigned will address Plaintiffs' additional arguments in support of its remand motion.

B. *Realignment of Defendant NTI-NY as a Plaintiff*

Plaintiff next argues that, even if complete diversity is found based on Defendant NTI-NY's state of incorporation and principal place of business, the Court should nonetheless realign Defendant NTI-NY as a plaintiff for jurisdictional purposes because "the interests of [Defendant NTI-NY] and Plaintiffs are aligned." (DE 13-8 at 14.) Defendants contend that "the only collision of interest is either . . . entirely between all [P]laintiffs on the one hand and all [D]efendants on the other or . . . between all [P]laintiffs on

7

the one hand and all [D]efendants *except* NTI-NY on the other, but with NTI-NY as the *res* over which they are fighting." (DE 17 at 13 (emphasis in original).)

In assessing subject matter jurisdiction, "'[d]iversity jurisdiction cannot be conferred upon the federal courts by the parties' own determination of who are plaintiffs and who are defendants,'" meaning that "federal courts have a 'duty' to 'look beyond the pleadings and arrange the parties according to their sides in the dispute.'" *Genger v. Genger*, 771 F. App'x 99, 100 (2d Cir. 2019) (summary order) (quoting *Md. Cas. Co. v. W.R. Grace & Co.*, 23 F.3d 617, 622 (2d Cir. 1993)) (brackets in original). To properly align the parties, "the Second Circuit has adopted a 'collision of interests' test, which 'require[s] the existence of an actual, substantial controversy' between the parties." *Gurney's Inn Resort & Spa Ltd. v. Benjamin*, 743 F. Supp. 2d 117, 121 (E.D.N.Y. 2010) (quoting *Md. Cas. Co.*, 23 F.3d at 622) (brackets in original). The collision of interests test requires courts to "consider the multiple interest and issues involved in the litigation" at the time of the filing of the complaint. *Id.* (internal quotation marks and citations omitted).

Because the corporation is a necessary party in a derivative action, the general rule is that the corporation should be aligned as a plaintiff since it is the real party in interest. *Kitzen v. Hancock*, CV 17-6926 (ADS) (AKT), 2019 WL 612227, at *6 (E.D.N.Y. Jan. 29, 2019) ("*Kitzen II*") (citing *Obstfeld v. Schwartz*, 621 F. Supp. 2d 87, 93 (S.D.N.Y. 2008)). "However, if aligning the corporation as a plaintiff would not provide a 'real collision of issues,' the court should realign the corporation to produce one." *Id.* (quoting *Smith v. Sperling*, 345 U.S. 91, 97 (1957)). Courts have emphasized that a corporation is properly considered a defendant if it is "actively antagonistic" to the plaintiff's interests. *Kitzen v. Hancock*, 2:17-cv-02966 (ADS)(AKT), 2017 WL 4892173, at *3 (E.D.N.Y. Oct. 27, 2017) ("*Kitzen I*") (internal quotation marks and citations omitted). In determining the presence or absence of antagonism, courts look to the face of the pleadings and the nature of the controversy. *Am. Lecithin Co. v. Rebmann*, 12-CV-929 (VSB), 2017 WL 4402535, at *4 (S.D.N.Y Sept. 30, 2017) (quoting *Smith*, 354 U.S. at 97). Antagonism is generally present in cases involving claims of fraud, breach of trust, and illegality on behalf of the management in control of the corporation, as well as circumstances where management is hostile to the interests of the

8

shareholders. *Hebei Tiankai Wood & Land Constr. Co., Ltd. v. Chen*, 348 F. Supp. 3d 198, 203 (E.D.N.Y. 2018) ("When, however, 'management is aligned against the stockholder and defends a course of conduct which [the stockholder] attacks,' there is 'antagonism' and the corporation should be aligned as a defendant.") On the other hand, antagonism is absent "where the corporation does not, would not, or cannot express opposition to the initiation of the lawsuit." *Bates v. Offit Kurman Att'ys at Law LLP*, 19 Civ. 2814 (KPF), 2019 WL 7067092, at *3 n.5 (S.D.N.Y. Dec. 23, 2019) (internal quotation marks and citation omitted).

*Hebei Tiankai Wood & Land Construction Co., Ltd. v. Chen* is instructive here. There, plaintiff—a citizen of China—was a majority shareholder of the nominal defendant company—a citizen of New York. 348 F. Supp. 3d at 199. Plaintiff alleged that the individual defendant, a minority shareholder and citizen of New York, made false representations to induce plaintiff into investing in the defendant company and then misused the money. *Id.* In moving to dismiss, the individual defendant sought to have the defendant company realigned as a plaintiff for purposes of diversity jurisdiction, arguing that plaintiff's breach of fiduciary duty and fraudulent inducement claims were derivative and properly belonged to the defendant company, warranting realignment of the company as a plaintiff. *Id.*

In concluding that realigning of the defendant company was inappropriate, the court found that antagonism existed between the defendant company and plaintiff. *Id.* at 204. The court reasoned that, although plaintiff was the majority shareholder of the defendant company, the individual defendant had "forcefully rebuffed" plaintiff's attempts to obtain control of the defendant company by, *inter alia*, denying plaintiff access to the books and records and refusing to cede any management authority to plaintiff. *Id.* Based on these circumstances, the court found that it was highly unlikely that the defendant corporation would institute either of plaintiff's claims against the individual defendant, meaning that antagonism existed. *Id.* The court also noted that plaintiff's allegations that the individual defendant had committed fraud and was wasting corporate funds supported the defendant company's alignment as a defendant. *Id.* ("When the dominate official of the corporation is accused of fraud, the corporation is appropriately aligned as a defendant.") (citation omitted).

9

The finding of antagonism in *Hebei Tiankai Wood & Land Construction Co., Ltd.* leads to a similar finding here, namely that Plaintiffs and Defendant NTI-NY are antagonistic and that, accordingly, Defendant NTI-NY is properly aligned as a defendant in this matter. Plaintiffs allege that Defendants Gleich and Kindt "hold[] themselves out as [o]fficers of [Defendant NTI-NY] [and] have . . . wrongfully take[n] control of [Defendant NTI-NY] to the exclusion of Plaintiffs." (DE 5 ¶ 14.) Although Plaintiffs allege that they maintain a majority stake in Defendant NTI-NY (*id.* ¶¶ 32, 79), Plaintiffs also allege that the individual Defendants have, through their control of Defendant NTI-NY, engaged in a series of "bad acts and self-dealing," including, among other things, siphoning the corporation's funds, misdirecting business opportunities away from the corporation for the benefit of Defendant NTI, and denying Plaintiffs access to the books and records of the corporation. (*Id.* ¶ 38.) These are precisely the types of allegations that support a finding of antagonism between Plaintiffs and Defendant NTI-NY, meaning, of course, that Defendant NTI-NY is properly aligned as a defendant. *Hebei Tiankai Wood & Land Constr. Co., Ltd.*, 348 F. Supp. 3d at 203 (finding antagonism between plaintiff and defendant company where plaintiff alleged that the minority shareholder, who had seized control of the defendant company, had engaged in corporate waste and malfeasance). Moreover, Plaintiffs' allegations that they are majority shareholders of Defendant NTI-NY does not alleviate their antagonism dilemma. Indeed, *Hebei Tiankai Wood & Land Construction Co., Ltd.* makes clear that *de facto*, rather than *de jure*, control is key to the antagonism analysis—because Plaintiffs here are unable "to wrest control from [the individual Defendants] despite being the majority shareholder," antagonism exists. *Id.*

In sum, because Plaintiffs are antagonistic against Defendant NTI-NY, Defendant NTI-NY is properly aligned as a defendant in this matter, and therefore does not destroy diversity jurisdiction by being a Nevada corporation. In the event that the district court does not grant Plaintiffs' motion for remand based on Defendant NTI-NY's principal place of business, *see supra*, the undersigned respectfully recommends that Plaintiffs' motion for remand based on the appropriate alignment of Defendant NTI-NY be denied.

C. *Defendant Wills' Citizenship*

Finally, Plaintiffs' assert that remand is required because Defendant Wills is a citizen of New York, destroying complete diversity. (DE 13-8 at 15–16.) Defendants contend that Defendant Wills is, to the contrary, a citizen of California, and thus does not destroy complete diversity. (DE 17 at 16–19.)

It is well-understood that a party's citizenship for purposes of diversity jurisdiction is the state in which he or she is domiciled at the time the action is commenced. *See Palazzo ex rel. Delmage v. Corio*, 232 F.3d 38, 42 (2d Cir. 2000). One's domicile is "'the place where a person has [her] true fixed home and principal establishment, and to which, whenever [s]he is absent, [s]he has the intention of returning.'" *Van Buskirk v. United Grp. Of Cos., Inc.*, 935 F.3d 49, 53 (2d Cir. 2019) (quoting *Corio*, 232 F.3d at 42). A person may only have one domicile at any given point in time, although it may change. *Id.* The term "[d]omicile is not synonymous with residence; a party can reside in one place and be domiciled in another." *Finnegan v. Long Island Power Auth.*, 409 F. Supp. 3d 91, 96 (E.D.N.Y. 2019) (internal quotation marks and citation omitted). Courts may consider the totality of the circumstances in assessing one's domicile, including

> current residence, voting registration, driver's license and automobile registration, location of brokerage and bank accounts, membership in fraternal organizations, churches, and other associations, places of employment or business, and payment of taxes[,] whether a person owns or rents his place of residence, the nature of the residence (i.e., how permanent the living arrangement appears) . . . and the location of a person's physician, lawyer, accountant, dentist, stockbroker, etc.

*Id.* (brackets in original and citation omitted). Most notably, "'intent to remain in the state is a key element of demonstrating . . . domicile.'" *Id.* (quoting *Hidalgo v. City of N.Y.*, No. 14-cv-2282, 2015 WL 1729811, at *2 (S.D.N.Y. Apr. 14, 2015)). The party asserting that diversity jurisdiction exists—here, the removing Defendants—bear the burden of establishing complete diversity. *Advani Enter. Inc. v. Underwriters at Lloyds*, 140 F.3d 157, 160 (2d Cir. 1998) (citation omitted). If, however, a party argues that there has been a change in domicile, the burden shifts to that party to prove by clear and convincing evidence the requisite intent to abandon the old and take up the new domicile. *Rosa v. Charitable Trucking Co.*, 21-CV-3153 (KNF), 2021 WL 3774312, at *3 (S.D.N.Y Aug. 24, 2021) (citation omitted).

11

Here, the record makes clear that Defendant Wills was domiciled in, and thus a citizen of, California at the commencement of this action. The affidavit of Defendant Amy Wills (the "Wills Affidavit") states that Defendant Wills has resided in California since approximately 1968, and is the state where she owns her only residence. (DE 15 ¶¶ 5–6.) Defendant Wills has "absolutely no plans to relocate [her] residence," keeps all of her personal possessions in California, is registered to vote in California, has a California driver's license, and has nearly all of her personal ties to California. (*Id.* ¶¶ 7–8.) Contrary to Plaintiffs' claims that Defendant Wills "has taken permanent residence in New York" because she has stayed in an apartment in Long Island City and periodically uses a company vehicle registered in New York (DE 13-8 at 15), the Wills Affidavit explains that Defendant Wills has only visited New York three times since August 2021 for business related purposes and always returned to her permanent residence in California (DE 15 ¶¶ 9–13). Because Defendant Wills only visited New York briefly for business and always maintained the intent of returning to California, she is properly recognized as a citizen of California for diversity purposes, and thus does not destroy complete diversity.

In sum, and in the event that the district court does not grant Plaintiffs' motion for remand based on Defendant NTI-NY's principal place of business, *see supra*, the undersigned respectfully recommends that Plaintiffs' motion for remand based on Defendant Wills' citizenship be denied.

### IV. <u>CONCLUSION</u>

For the foregoing reasons, the undersigned respectfully recommends that Plaintiffs' motion for remand be granted based on Defendants' failure to meet their burden of establishing Defendant NTI-NY's principal place of business. In the event the district court denies Plaintiffs' motion for remand based on Defendant NTI-NY's principal place of business, the undersigned respectfully recommends that Plaintiffs' motion for remand be denied in its entirety.

### V. <u>OBJECTIONS</u>

A copy of this Report and Recommendation is being electronically served on counsel. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a),

72(b). Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections. Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated:   Central Islip, New York
        March 9, 2022

                                                /s/ *James M. Wicks*
                                                JAMES M. WICKS
                                          United States Magistrate Judge