UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
GOLD COAST TRANSPORTATION SERVICE LLC;
JOSEPHINE HERRSCHAFT; ANTHONY HERRCSHAFT

                **REPORT AND
                RECOMMENDATION**

              Plaintiffs,        21-CV-05396 (EK)(JMW)

      -against-

NTI-NY, INC.; NATIONAL TRANSPORTATION, INC.,
JAMES GLEICH; JOHN KINDT; XYZ ENTITIES 1
THROUGH 10

              Defendants.
-----------------------------------------------------------------------X

**A P P E A R A N C E S :**

Rodman E. Honecker, Esq.
**Windels Marx Lane & Mittendorf, LLP**
120 Albany Street Plaza
New Brunswick, NJ 08901
*Attorney for Plaintiffs*

NTI-NY, Inc.
*Appearing Pro Se*

National Transportation, Inc.
*Appearing Pro Se*

John Kindt
*Appearing Pro Se*

**WICKS,** Magistrate Judge:

       Plaintiffs Gold Coast Transportation Service LLC ("Gold Coast"), Josephine Herrschaft,

and Anthony Herrschaft (collectively the "Herrschafts") commenced this action in state court

against Defendants National Transportation, Inc. ("NTI"), James Gleich, John Kindt, Amy Wills,

Rich Nolan, and Marc A. Jacobi, as well as nominal Defendant NTI-NY, seeking a declaratory

1

judgment that Plaintiffs own a majority stake in Defendant NTI-NY and alleging that the individual Defendants have committed a litany of corporate misdeeds.

Before the Court is Plaintiffs' motion for entry of a default judgment (DE 76) against two Defendants Kindt and NTI ("Defaulting Defendants"). For the reasons that follow, the undersigned respectfully recommends that Plaintiffs' motion be GRANTED, that judgment be entered against the Defaulting Defendants, and Gold Coast be awarded damages of $717,675.30 against Defaulting Defendants and $112,200 against Kindt.

## I.    BACKGROUND

The following allegations are drawn from the Second Amended Complaint ("SAC"). Defendant NTI-NY is a Nevada corporation that provides ground transportation to airline crews in the New York Metropolitan area. (DE 57 at ¶ 9.) Plaintiff Gold Coast, a limited liability company, is a shareholder of Defendant NTI-NY. (*Id.* at ¶ 6.) Plaintiffs the Herrschafts are the two members of Gold Coast. (*Id*. at ¶¶ 7-8.) The only other shareholder of Defendant NTI-NY is Defendant NTI, also a Nevada corporation. (*Id*. at ¶ 10.)

Plaintiffs, who have extensive experience providing ground transportation services in the New York Metropolitan area, allegedly made a $500,000 loan to Defendant NTI to help Defendants Gleich and Kindt, owners of Defendant NTI, keep their business afloat. (*Id*. at ¶¶ 32, 34-35, 37-38.) After announcing their intent to cease operations of their prior transportation business, Golden Touch, Plaintiffs developed a plan to push business to Defendant NTI given their vested interest—the $500,000 loan—in seeing Defendant NTI succeed. (*Id*. at ¶¶ 39-41.) Without informing Plaintiffs, Defendant Gleich allegedly incorporated NTI-NY, naming himself President, Defendant Kindt Secretary, and himself, Defendant Kindt, and Plaintiff Josephine Herrschaft as directors. (*Id*. at ¶ 42.) Immediately following the incorporation of Defendant

NTI-NY, the parties disputed which entity—Defendant NTI or Plaintiff Gold Coast, the two shareholders of the newly formed corporation—owned the majority stake. (*Id*. at ¶¶ 43, 46.) Plaintiffs allege that the parties did agree, however, that Plaintiffs would have access to all of the corporation's financial information. (*Id*. at ¶ 48.) Plaintiffs further allege that, after they secured service contracts through their business contacts for Defendant NTI-NY, Defendants Gleich and Kindt engaged in a series of "bad acts and self-dealing," including, among other things, siphoning the corporation's funds, misdirecting business opportunities away from the corporation for the benefit of Defendant NTI, and denying Plaintiffs access to the books and records of the corporation. (*Id*. at ¶ 52.)

## II.   <u>PROCEDURAL HISTORY</u>

Plaintiffs commenced this action in New York State Supreme Court in Nassau County by filing their verified complaint. (DE 1-2.) On September 29, 2021, Defendants timely removed the case to this Court on diversity of citizenship grounds. (DE 1.) Plaintiffs subsequently filed an amended complaint on October 1, 2021. (DE 5.)

On October 13, 2021, District Judge Hurley ordered the parties to file briefs as to whether this matter should be remanded to state court. (*See* Electronic Order dated October 13, 2021.) Parties filed their papers by November 9, 2021. (DE 13, DE 14, DE 19.) Defendants subsequently filed a letter request for a pre-motion conference for its anticipated motion to dismiss all counts in the amended complaint, but Judge Hurley denied it and allowed them to renew once a decision on the motion to remand was rendered. (*See* Electronic Order dated Dec. 1, 2021 and Electronic Order dated Dec. 17, 2021.)

Plaintiffs also sought a stay of discovery which was granted by the undersigned in light of the pending motion to remand. (*See* Electronic Order dated Jan. 20, 2022.) The motion to

remand was referred to the undersigned and parties entered into a briefing schedule for Plaintiffs' motion for leave to file a SAC.  (*See* Electronic Order dated Feb. 9, 2022.)

On March 9, 2022, the undersigned recommended that Plaintiffs' motion for remand be granted finding that although Defendant NTI-NY is properly aligned as a defendant and does not destroy diversity jurisdiction by being a Nevada corporation and although Defendant-Wills had the intent of returning to California and did not remain in New York and thus was a citizen of California for diversity purposes in this case which would not destroy complete diversity, Defendant failed to meet its burden of establishing Defendant NTI-NY's principal's business was located in a state other than New York which destroyed subject matter jurisdiction.  (DE 35.) Defendants objected to the undersigned's Report and Recommendation and Plaintiffs opposed their objection.  (DE 39; DE 41.)

Defendant National Transportation, Inc. filed for bankruptcy on March 11, 2022.  (DE 36.)  This action was stayed as to that Defendant pending the bankruptcy proceeding, not as to the others.  (DE 49.)  The stay was then lifted as of June 22, 2022 because the bankruptcy case was dismissed.  (*See* Electronic Order dated June 22, 2022.)

On May 10, 2022, Judge Hurley declined to adopt the undersigned's Report and Recommendation finding that Defendants sufficiently demonstrated that they maintained their offices in other states, not New York.  (DE 46.)  Judge Hurley thus denied Plaintiffs' motion to remand, allowing the case to proceed here.

The parties continued with their briefing on the motion to amend the first complaint, which was granted by the undersigned.  (DE 56.)[1]  Defaulting Defendants did not oppose the motion to amend.  (*Id.*)  The Second Amended Complaint ("SAC") was filed on July 19, 2022.

---

[1] Shortly after this filing, the case was randomly reassigned to District Judge Eric R. Komitee. (*See* Electronic Order dated July 12, 2022.)

(DE 57.)  The SAC alleges, in relevant part, violation of the Nevada Fraudulent Transfers Act pursuant to § 112.80 against Defaulting Defendants; fraud against Kindt; breach of fiduciary duty against Kindt; breach of loyalty against Kindt; unfair competition and tortious interference against Kindt; conversion against Kindt; conspiracy against Kindt; and unjust enrichment against Defaulting Defendants.  (DE 76-1 at 4.)  The SAC was filed on the docket which was served onto Defendants via electronic filing by Timothy Keane, Defendants' counsel at the time. Defendants then moved for an extension of time to file an answer (DE 58) which was granted (DE 60).

Of note here is Plaintiffs' request for certificate of default against the Defaulting Defendants on November 4, 2022.  (DE 67.)  On November 8, 2022, the Clerk of the Court subsequently entered an entry of default.  (DE 68.)  Defendant Gleich failed to appear at a court-ordered settlement conference, which included the related case 1:21-cv-05618-PKC-JRC, *Herrschaft et al. v. National Transportation, Inc*., and was further directed to appear the following day when it was postponed, but he failed to do so.  (*See* Electronic Order dated January 24, 2023.)  Gleich had filed for bankruptcy.  (DE 72.)  At the settlement conference, Plaintiffs and Defendants Jacobi, Nolan and Wills agreed to resolve their disputes, but Plaintiffs still intended to pursue default judgments against the remaining Defendants.  (*See* Electronic Order dated Jan. 24, 2023.)  Claims against Defendants Jacobi, Nolan, and Willis were then dismissed from the case.   (*See* Electronic Order dated Feb. 13, 2023.)

Attorney for Defendants made a motion to be relieved as counsel for Defendants Kindt, NTI-NY, and National Transportation, Inc.  (DE 61.)  The undersigned granted that motion, but the Defaulting Defendants failed to get a new attorney and Plaintiffs moved for default against

them in this action and in the *Herrschaft* action.  (*See* Electronic Order dated Oct. 3, 2022; DE 76.)

Before the Court is Plaintiffs' motion for default judgment against the two Defaulting Defendants.  (DE 76.)  Neither NTI nor Kindt has responded to the SAC which prompted Plaintiffs to submit the instant motion for default judgment against them.  Neither filed papers in opposition to this motion.

## III.  PLAINTIFFS' POSITION

The allegations of the SAC, which support the current motion for default judgment, allege that both NTI and Kindt made a series of improper fraudulent transfers without Plaintiffs' knowledge or consent.  (DE 76-1.)  Specifically, Plaintiffs make the following allegations against the Defaulting Defendants:

### A.  NTI Transfers

NTI fraudulently transferred money at least 25 times from the NTI-NY account to NTI's account after NTI-NY was formed.  (DE 76-1 at 4.)  None of these transfers were made with Plaintiffs' knowledge or consent and were intentionally concealed from Plaintiffs in that the transfers contained either a fake or no description at all. (*Id.*)  These transfers amount to $871,731.66.  (*Id.* at 5.)

### B.  NTI-NY's Earned Monies from Improper Transfers

NTI also moved the revenue earned by NTI-NY, pursuant to its Transportation Services Agreement with Delta Air Lines, to NTI.  (*Id.* at 5-6.)  This amount totals $2,073,923.64 and Plaintiffs had no knowledge of nor did they give consent for these transfers.  (*Id.* at 6.)

**C. Proceeds from the NewCo Loan to NTI**

NewCo Capital Group VI LLC agreed to loan NTI-NY $365,000 whereby NTI-NY would be the first-named obligor and Defendant-Gleich and Defendant-Kindt would be the personal guarantors.  (*Id* at 6.)  Gleich and Kindt placed NTI-NY's Virgin-Atlantic contract and other NTI-NY assets as collateral.  (*Id.* at 6-7.)  Plaintiffs had no knowledge of, nor did they give consent for such a loan.  (*Id.* at 7.)  When NewCo sent over the loan monies, Gleich and Kindt had $245,000 of those funds fraudulently transferred to NTI's bank account, which was unbeknownst to the Plaintiffs.  (*Id.* at 7.)

**D. Kindt's Improper Wire Transfers for His Personal Use**

There were at least three incidents in 2021 in which proceeds from NTI-NY's bank account were transferred to Kindt for his personal use but were allegedly for "partial reimbursement report monies/loan repay."  (*Id.* at 7-8.)  These transfers amounted to $220,000. (*Id.* at 8.)

The undersigned analyzes each of Plaintiffs' claims below.

## IV.    <u>LEGAL STANDARD</u>

There is a two-step process for the granting of default judgments under Fed. R. Civ. P. 55. First, the Clerk of the Court enters default when a party fails to plead or otherwise defend the action.  *See* Fed. R. Civ. P. 55(a); *see also* E.D.N.Y. Local R. 55.2.  After the clerk's certificate of default is issued and posted on the docket, a party may apply for entry of a default judgment. Fed. R. Civ. P. 55(b); *see also* E.D.N.Y. Local R. 55.2(b).  The decision to grant a motion for default is left to the discretion of the district court.  *United States v. Dougherty*, No. 15-cv-554 (ADS) (AKT), 2016 WL 5112063, at *3 (E.D.N.Y. Aug. 1, 2016), *report and recommendation adopted*, 2016 WL 4705549 (E.D.N.Y. Sep. 7, 2016).  A default constitutes an admission of all

well-pleaded factual allegations in the complaint, except those relating to damages. *See Greyhound Exhibitgroup, Inc. v. E.L.U.L. Realty Corp.*, 973 F.2d 155, 158 (2d Cir. 1992); *see also Joe Hand Promotions, Inc. v. El Norteno Rest. Corp.*, No. 06-cv1878(RJD)(JMA), 2007 WL 2891016, at *2 (E.D.N.Y. Sept. 28, 2007) (finding that a default constitutes an admission of all well-pleaded factual allegations in the complaint and the allegations as they pertain to liability are deemed true).

However, the movant must still demonstrate that the allegations set forth in the complaint state valid claims. *See City of N.Y. v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 137 (2d Cir. 2011) (suggesting that "a district court is 'required to determine whether the plaintiff's allegations establish the defendant's liability as a matter of law'" prior to entering default judgment (quoting *Finkel v. Romanowicz*, 577 F.3d 79, 84 (2d Cir. 2009) (alterations omitted)). The court must therefore ensure that (1) Moving Defendants satisfied all the required procedural steps in moving for default judgment, *see* Local Civ. R. 55.2; that (2) Moving Defendants' allegations, when accepted as true, establish liability as a matter of law, *see Finkel*, 577 F.3d at 84; and that (3) Moving Defendants have provided a sufficient basis for determining damages, *see Greyhound Exhibitgroup*, 973 F.2d at 158.

Before obtaining a default judgment, a plaintiff must establish proper service of the Summons and Complaint on the defaulting party pursuant to Rule 4 of the Federal Rules of Civil Procedure. *Advanced Cap. Com. Grp., Inc. v. Suarez*, 2013 WL 5329254, at *2 (E.D.N.Y. Sep. 20, 2013) (adopting report and recommendation). When considering a motion for default, a court may "assure that it has personal jurisdiction over the defendant." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 133 (2d Cir. 2011) (citation omitted). Unlike subject

matter jurisdiction, personal jurisdiction can be "purposely waived or inadvertently forfeited." *Id*.

Once liability for default is established, then next inquiry is damages. A party's default constitutes concession of all well pleaded allegations, however, such default "is not considered an admission of damages." *Double Green Produce*., 387 F. Supp. 3d at 271 (quoting *Cement & Concrete Workers Dist. Council Welfare Fund, Annuity Fund, Educ. & Training Fund & Other Funds v. Metro Found. Contractors Inc*., 699 F.3d 230, 234 (2d Cir. 2012)). Generally, a plaintiff must establish claims for damages through an evidentiary proceeding, although a hearing is not mandatory as long as the Court ensures the plaintiff sets forth a basis for the specified damages. *Id*. at 271-72 (citations omitted); *see also Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp., Div. of Ace Young Inc*., 109 F.3d 105, 111 (2d Cir. 1997) (citation omitted) (evidentiary hearing not required so long as there is a basis for the damages awarded).

## V.    DISCUSSION

### A.  Procedural Compliance

Local Civil Rule 7.1 requires motions to include a notice of motion, a memorandum of law, and supporting affidavits or exhibits containing any necessary factual information for the decision of the motion. E.D.N.Y. Local R. 7.1(a)(1) - (3). And, Local Civil Rule 55.2 requires that a party moving for default judgment append to its application the Clerk's certificate of default, a copy of the claim to which no response has been made, a proposed form of default judgment, and that all papers submitted to the Court under Rule 55.2(b) be mailed to the party against whom a default is sought at the last known address of such party with proof of mailing filed with the Court. E.D.N.Y. Local R. 55.2(b) - (c).

Moving Plaintiffs filed the subject motion for default judgment (DE 76), which includes a proposed judgment (DE 76-10), a memorandum of law (DE 76-1), a declaration in support (DE 76-2; DE 76-6), a copy of the relevant pleadings (DE 76-3; 76-9), the certificate of default as to NTI and Kindt entered by the Court on November 8, 2022 (DE 76-7), and the affidavit of service confirming service of the motion for default as to NTI and John Kindt via certified, registered, return receipt requested and regular mail.  (DE 76-8.)  Accordingly, the Court finds that the instant motion complies with the procedural requirements of the Local Civil Rules.

**B.  Default Judgment Factors**

In evaluating whether to grant a default judgment, courts consider (1) whether the defendant's default is willful; (2) whether the defendant has a meritorious defense to plaintiff's claims; and (3) the level of prejudice the non-defaulting party would suffer if the motion for default judgment is denied.  *See Trustees of Empire State Carpenters Annuity, Apprenticeship, Lab. Mgmt. Co-op., Pension & Welfare Funds v. Flooring Experts, Inc.*, No. 12-CV-6317 (ADS)(AKT), 2013 WL 4042357, at *2 (E.D.N.Y. Aug. 8, 2013), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013).  *But see Brown v. Gabbidon*, No. 06-CIV-8148 (HB), 2007 WL 1423788, at *4 (S.D.N.Y. May 14, 2007) ("A discussion of prejudice, willfulness and meritorious defenses is required once there is an entry of default or a default judgment and the court considers a request by a defaulting party to vacate that entry pursuant to Rules 55(c) or 60(b).").

Consideration of these three factors counsels toward an entry of default judgment where, as here, Defendants have failed to appear and present a defense[2], and Plaintiffs are left with no

---

[2] As an aside, the undersigned notes that courts have indeed granted plaintiffs' motions for default judgment where defendant was previously warned that corporate entities cannot proceed *pro se* in federal court.  *See Rowland v. Cal. Men's Colony, Unit II Men's Advisory Council*, 506 U.S. 194, 202 (1993); *Lattanzio v. COMTA*, 481 F.3d 137, 139-40 (2d Cir. 2007).  Thus, NTI's failure to retain new counsel,

10

further steps to take to secure relief. *See ADI Glob. Distribution*, 2023 WL 3355049, at *4; *see also Flooring Experts*, *Inc*., 2013 WL 4042357, at *3 (when a defendant is continuously and completely unresponsive the failure to respond is considered willful), *report and recommendation adopted*, 2013 WL 4761151 (E.D.N.Y. Sept. 3, 2013); *Empire State Carpenters Welfare v. Darken Architectural Wood*, No. 11-CV-46 (JS)(AKT), 2012 WL 194075, at *3 (E.D.N.Y. Jan. 17, 2012) ("[T]he Court is unable to make a determination whether the Defendants have a meritorious defense since no such defense has been presented to the Court"), *report and recommendation adopted*, 2012 WL 832452 (E.D.N.Y. Mar. 12, 2012); *Northwell Health, Inc. v. Northwell Staffing Agency, LLC*, No. 17-CV-1611 (DRH)(AKT), 2018 WL 1525803, at *9 (Mar. 1, 2018) (noting that denying the motion for default judgment would be prejudicial to Plaintiff since "there are no additional steps available to secure relief in this Court"), *report and recommendation adopted*, 2018 WL 1525698 (E.D.N.Y. Mar. 28, 2018) (citations omitted).

## C. Jurisdiction

### i. Subject Matter Jurisdiction

Diversity of citizenship is achieved only where complete diversity among the parties exists, meaning that "there is no plaintiff and no defendant who are citizens of the same [s]tate." *OneWest Bank, N.A. v. Melina*, 827 F.3d 214, 217–18 (2d Cir. 2016) (quoting *Wis. Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998)).

---

even after being warned that it cannot proceed in this manner, would provide a proper basis for entering default against it. *See* Electronic Order dated Oct. 3, 2022; *Trustees of Loc. 807 Lab. -Mgt. Pension Fund v. Showtime on the Piers, LLC,* No. 21-CV-3677, 2023 WL 2969298, at *3-4 (E.D.N.Y. Mar. 6, 2023); *Trustees of Bldg. Trades Educ. Benefit Fund v. Romero Electric LLC*, 19-CV-3515, 2021 WL 3604811, at *4 (E.D.N.Y. July 19, 2021), *report and recommendation adopted,* 2021 WL 3603613 (E.D.N.Y. Aug. 13, 2021).

As Plaintiffs have pointed out in their moving papers, parties engaged in extensive briefing as to whether there was subject matter jurisdiction in this case.  (DE 13 through DE 17; DE 19.)  Judge Hurley ultimately ruled against the Plaintiffs, and found there was proper subject matter jurisdiction here.  (DE 46 at 15) (noting that there is diversity of citizenship because Plaintiffs are based in New York and each of the NTI-NY officers maintained their offices and operated under policies in states other than New York, and that its headquarters and offices are situated in Nevada).  And, as of July 19, 2022, Plaintiffs have requested damages of more than $26 million, so the amount of controversy is met here. (DE 57 at 47-49.)

Accordingly, pursuant to 28 U.S.C. § 1332, the Court has jurisdiction over this matter as Plaintiffs and Defendants are citizens of different states and the amount in controversy exceeds $75,000.

### ii.    Personal Jurisdiction

Plaintiffs argue that the Defaulting Defendants concede there is personal jurisdiction here because Defendants filed for removal of the matter to this Court.  (DE 76-1 at 10.)  They also allege that the Defaulting Defendants never contested personal jurisdiction at the outset of this litigation.  (*Id.*)

Parties must raise a lack of personal jurisdiction defense via motion or responsive pleading.  Fed. R. Civ. P. 12(h)(1); *Roberts v. Bennaceur*, 658 Fed. Appx. 611, 616 (2d Cir. 2016).  Unlike subject matter jurisdiction, personal jurisdiction can be "purposely waived or inadvertently forfeited."  *Id*.

The mere removal of a case to federal court does not waive an objection to personal jurisdiction.  *See Cantor Fitzgerald, L.P. v. Peaslee*, 88 F.3d 152, 157 n.4 (2d Cir. 1996) ("Plaintiffs also argue that Peaslee waived his defense of lack of personal jurisdiction by

removing to federal court and commencing discovery on the merits after filing his motion to dismiss. We disagree. Removal does not waive any Rule 12(b) defenses."); *Tadco Constr. Corp. v. PERI Framework Sys.*, 460 F. Supp. 2d 408, 410 (E.D.N.Y. 2006) (collecting cases).

Thus, although Plaintiffs here argue that Defaulting Defendants waived personal jurisdiction in having this case removed to federal court (DE 76 at 10), this argument fails because Defaulting Defendants' action, without more, do not constitute a waiver of this defense.

Instead, the undersigned looks to whether the Defaulting Defendants have been properly served. Before obtaining a default judgment, a plaintiff must establish proper service of the Summons and Complaint on the defaulting party pursuant to Rule 4 of the Federal Rules of Civil Procedure. *Advanced Cap. Com. Grp., Inc. v. Suarez*, 2013 WL 5329254, at *2 (E.D.N.Y. Sep. 20, 2013) (adopting report and recommendation).

Rule 4 prescribes the manner in which service of process must be effected in order to subject a defendant to the court's jurisdiction. *See* Fed. R. Civ. P. 4. Rule 4(e) provides that an individual may be served, *inter alia*, by delivering a copy of the summons and of the complaint to the individual personally or leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there. *See* Fed. R. Civ. P. 4(e)(2)(A-B). A domestic or foreign corporation may be served by "delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process. . . ." Fed. R. Civ. P. 4(h)(1)(B).

However, the Federal Rules provide that a party waives its personal jurisdiction defense if they "(A) omit[] it from a motion….or (B) fail[] to either: (i) make it by motion…or (ii) include it in a responsive pleading or in an amendment…." Fed. R. Civ. P. 12(h)(1)(A)-(B).

13

As for the original complaint, Kindt stated that he was not served with a copy of the summons and complaint in this action but rather was only provided a copy after Gleich, NTI-NY, and NTI were served on September 10, 2021.  (DE 1-5 at ¶ 9.)  He did not believe that anyone from NTI received copies of the summons and complaint prior to that date either.  (*Id.*)

The docket also reflects that each of the individual Defendants were served with the Summons and Amended Complaint.  (DE 11.)  However, the summons was returned unexecuted for both Rich Nolan, Comptroller of NTI (DE 21), and John Kindt (DE 24).

Despite his statement that he had not received a copy of the summons and complaint, Kindt and NTI *did* file an Answer to the original complaint (DE 9).  *Obanya v. Select Portfolio Servicing, Inc.*, 14 CV 5255 (NGG)(LB), 2015 U.S. Dist. LEXIS 135217, at *6 n.5 (E.D.N.Y. Aug. 28, 2015) (finding that defendant who returned summons unexecuted but moved to dismiss waived any defense regarding personal jurisdiction or insufficient service of process); *cf Cox v. City of New Rochelle*, No. 17-cv-8193 (PMH), 2020 U.S. Dist. LEXIS 178790, at *4 n.3 (S.D.N.Y. Sept. 28, 2020) (noting defendants were served but never entered an appearance or answered).  Further, Defendants' Answer was null of any defense to personal jurisdiction.  (*See generally* DE 9.)  Thus, the undersigned finds that Defaulting Defendants waived their personal jurisdiction defense when they otherwise answered the complaint and failed to include that defense in their responsive pleading.

Finally, Defendants filed a motion for extension of time to file an answer, constituting a waiver of personal jurisdiction defense, after receiving the SAC (DE 57) before Timothy Keane, Defaulting Defendants' counsel, withdrew from representing them.  (DE 58.); *see Obanya*, 2015 U.S. Dist. LEXIS 135217 at *6 n.5 ("Defendant MERSCORP waived any defense regarding

personal jurisdiction or insufficient service of process by filing this pre-answer motion to dismiss."). Accordingly, this Court has personal jurisdiction over these Defaulting Defendants.

Despite their knowledge of the three iterations of the Complaint, Defaulting Defendants have not appeared in this action after Keane withdrew as counsel, and thus, the Clerk properly entered a certificate of default as to each of them. (DE 68.) Plaintiffs have submitted a motion for default judgment and Defaulting Defendants are still nowhere in sight. (DE 76.) Thus, the relevant inquiry now is whether, taking the well-pleaded allegations in the Complaint as true, Defaulting Defendants are liable to Plaintiff. And if so, whether Plaintiffs have carried their burden of establishing damages.

### D. Liability—Whether Plaintiffs' Claims Are Adequately Pled[3]

Plaintiffs allege that the Defaulting Defendants have concealed their fraudulent acts from Plaintiffs and Plaintiffs themselves have pled these acts sufficiently in their SAC. (*Id.* at 10.) Plaintiffs allege the following causes of action:

1. Violation of the Nevada Fraudulent Transfers Act against both Defaulting Defendants (count five) (DE 57 at 33);

2. Fraud under Nevada Law against Kindt (count six) (*Id.* at 34);

3. Breach of Fiduciary Duty against Kindt (count seven) (*Id*. at 36);

4. Breach of the Duty of Loyalty against Kindt (count eleven) (*Id.* at 39);

---

[3] If a party cites to one state's law, then it is implied that it is the law to be applied. *See Krumme v. WestPoint Stevens Inc*., 238 F.3d 133, 138 (2d Cir. 2000); *see also Henneberry v. Sumitomo Corp. of Am*., No. 04 CIV. 2128, 2005 U.S. Dist. LEXIS 7475, 2005 WL 991772, at *5, n. 3 (S.D.N.Y. Apr. 27, 2005) ("Where the parties so assume, the Court need not address choice of law *sua sponte*."). Here, Plaintiffs apply Nevada law, have provided no choice of law analysis, and Defaulting Defendants have not objected. Thus, the undersigned applies Nevada law to the dispute here. *Scharnikow v. Siracuse,* 15-CV-6991 (DRH) (SIL), 2016 U.S. Dist. LEXIS 169631, at *10 (E.D.N.Y. Dec. 6, 2016) (finding that plaintiff made no choice of law argument in its papers but cited New York law in its papers and that defaulting defendant did not oppose, so New York law applied.)

5.  Unfair Competition and Tortious Interference with Contract and Prospective Economic Advantage against Kindt (counts twelve and thirteen) (*Id.* at 41);

6.  Conversion against Kindt (count ten) (*Id.* at 38);

7.  Civil Conspiracy against Kindt (count fourteen) (*Id.* at 42); and

8.  Unjust Enrichment against both Defaulting Defendants (count sixteen) (*Id.* at 44).

The undersigned examines at each of these claims below.[4]

### i.  Nevada Fraudulent Transfers Act as to Defaulting Defendants

Plaintiffs allege that the Defaulting Defendants have committed fraud because of the transfers and are thus liable under the Nevada Fraudulent Transfers Act. (DE 76-1 at 11.)

Under the Nevada Fraudulent Transfers Act,

1.  *A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation:*

(a)  *With actual intent to hinder, delay or defraud any creditor of the debtor; or*

(b)  *Without receiving a reasonably equivalent value in exchange for the transfer or obligation, and the debtor:*

(1)  Was engaged or was about to engage in a business or a transaction for which the remaining assets of the debtor were unreasonably small in relation to the business or transaction; or
(2)  Intended to incur, or believed or reasonably should have believed that the debtor would incur, debts beyond his or her ability to pay as they became due.

2.  In determining actual intent under paragraph (a) of subsection 1, consideration may be given, among other factors, to whether:

(a)  The transfer or obligation was to an insider;
(b)  The debtor retained possession or control of the property transferred after the transfer;
(c)  The transfer or obligation was disclosed or concealed;

---

[4] Well-pleaded allegations in a complaint are presumed true when a defendant fails to present a defense to the court. *Antoine v. Brooklyn Maids 26, Inc*., 489 F. Supp. 3d 68, 82 (E.D.N.Y. 2020). However, "a plaintiff still must demonstrate that the factual allegations set forth in [the] complaint state valid claims to relief." *Id*. (citing *United States v. Meyers*, 236 F. Supp. 3d 702, 708 (E.D.N.Y. 2017).

(d)  Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit;

(e)  The transfer was of substantially all the debtor's assets;

(f)  The debtor absconded;

(g)  The debtor removed or concealed assets;

(h)  The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred;

(i)  The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred;

(j)  The transfer occurred shortly before or shortly after a substantial debt was incurred; and

(k)  The debtor transferred the essential assets of the business to a lienor who transferred the assets to an insider of the debtor.

NRS 112.180 (emphasis added).

Section NRS 112.180(1)(a) denotes actual fraudulent transfers while 112.180(1)(b) denotes constructive fraudulent transfers. *Runvee, Inc. v. United States,* No. 2:10-CV-2260-KJD-GWF, 2013 U.S. Dist. LEXIS 42368, at *29 (D. Nev. 2013).  "The first step in analyzing whether actual or constructive fraudulent transfer occurred is to determine if the debtor made the transfer."  NRS 112.180(1); *MOH Mgmt., LLC v. Michelangelo Leasing, Inc.*, 437 P.3d 1054 (Nev. 2019).   "If the debtor did not make the transfer in question, then Nevada's Uniform Fraudulent Transfer Act offers no protection."  *Id.*

No one of the factors in NRS 112.180(2) is conclusive of actual intent.  *Leonard v. Superpumper, Inc*., 2019 Nev. Dist. LEXIS 712, at *53 (2019).  In fact, as few as three badges have been found to establish actual intent.  *Id.* at *53-54.

NRS 112.180(1)(a) "is a prerequisite to setting aside the transfer or imposing damages."  *Herup v. First Boston Fin., LLC*, 123 Nev. 228, 232 (2007).  Further, judgments in a fraudulent transfer claim can be directed against the person for whose benefit the transfer was made.  *Morgan Stanley High Yield Sec., Inc. v. Jecklin*, No. 2:05-cv-1364-RFB-PAL, 2018 U.S. Dist. LEXIS 73159, at *44 (D. Nev. 2018).

17

### 1. Actual Intent to Hinder Delay or Defraud and Factors in NRS 112.180(2)

Plaintiffs argue that Defaulting Defendants transferred monies to themselves as insiders which did not belong to them, nor did they have a legitimate purpose or Plaintiffs' consent for doing so.  (DE 76-1 at 12.)  Kindt was the one who directed the fraudulent transfers.  (*Id.*)  NTI was the improper recipient of Delta Revenue in the amount of over $2 million and other transfers amounting to over $800,000.  (*Id.* at 12-13.)

Intent for actual fraudulent transfers is demonstrated through circumstantial evidence, specifically looking to evidence or inferences from debtor's conduct.  *Leonard*, 2019 Nev. Dist. LEXIS 712 at *50.  And the debtor's knowledge that the transaction will cause a detriment to creditors or if the debtor participates in the transaction for the purpose of hindering a creditor, then it is sufficient to show actual intent. *Id.* at *50-51.

Here, as Plaintiffs allege in the SAC, NTI-NY, Inc. earned approximately $2 million in revenue but never saw these monies because of Defendants' theft.  (DE 57 at ¶ 1.)  Further, Plaintiffs list Kindt as among the Debtors liable for the fraudulent transfers.  (*Id.* at ¶ 166.)

With respect to the badges of fraud in NRS 112.180(2), Plaintiffs only allege that factor (a), transfer or obligation was to an insider, was present here.  According to the NRS, if the debtor is a corporation, as here, then an insider includes a director, officer, or person otherwise in control of the debtor.  NRS 112.150 (7)(b).  It is well established that because Kindt was a director for the company, he is considered an insider and thus was able to fraudulently transfer the funds without Plaintiffs' knowledge or consent.  *See Henry v. Rizzolo*, No. 08-CV-00635 (PMP)(GWF), 2012 U.S. Dist. LEXIS 54836, at *20-21 (D. Nev. Apr. 19, 2012) (finding that defendant transferred substantial funds to an insider and concealed those transfers partially to

avoid plaintiffs from receiving those funds amounted to a fraudulent transfer under

112.180(1)(a).

However, even if the Court does not find factor (a) present, the undersigned also

concludes that several of the other factors were met here:

(b)  The debtor retained possession or control of the property transferred after the transfer: the funds were maintained in NTI's bank account after the transfer;

(c)  The transfer or obligation was disclosed or concealed: Plaintiffs never knew of the transferred assets once they occurred (DE 57 at ¶ 79);

(d)  Before the transfer was made or obligation was incurred, the debtor had been sued or threatened with suit: At least some of the transfers were made after the debtors were sued—13 of the transfers were made after this suit was initiated in the Nassau County Supreme Court.  (*Id.* at ¶ 80);

(e)  The transfer was of substantially all the debtor's assets: all of NTI's assets were being transferred to other entities (*Id.* at ¶ 81.) This is evident from the amount of money Plaintiffs claimed that the company should have had versus what was left in the account.;

(g)  The debtor removed or concealed assets: For example, Defendants specifically concealed the Newco loan from Plaintiffs which had no benefit to NTI-NY;

(h)  The value of the consideration received by the debtor was reasonably equivalent to the value of the asset transferred or the amount of the obligation incurred: Neither Plaintiffs nor NTI received anything in return (*Id.* at ¶ 89); *see Folk v. Fishman*, No. A-16-747075-C, 2019 Nev. Dist. LEXIS 2586, at *23 (July 15, 2019) (noting "all three transfers occurred with absolutely 'no consideration' being received");

(i)  The debtor was insolvent or became insolvent shortly after the transfer was made or the obligation was incurred: There should have been millions in NTI-NY's account but there was only a couple hundred thousand left (DE 57 at ¶ 4 n.2) (noting that NTI-NY bank records showed that NTI-NY had a balance of slightly more than $23,000 as of January 2022 when it should have been over $2 million); and

(j)  The transfer occurred shortly before or shortly after a substantial debt was incurred: After obtaining the Newco loan, Defendants transferred the money to another account and defaulted, leaving NTI-NY to foot the bill for a loan it had no part in. (*Id.* at ¶ 2.)

Plaintiffs have ample evidence to support their contentions—they point to Lexicon bank

account records denoting the various fraudulent transfers from NTI-NY's account to NTI, which

were transferred at the behest of Kindt and Gleich. (*Id.* at ¶¶ 85-86; DE 76-4); *see Morgan Stanley High Yield Sec., Inc.*, 2018 U.S. Dist. LEXIS 73159 at *44 (finding that substantial payments to daughter corporation which was closely held by defendants and that the corporation itself was insolvent or became insolvent); *cf. NCP Bayou 2, LLC v. Medici*, 437 P.3d 173 (Nev. 2019) (finding that the bank failed to show evidence of transfer from the debtor to support a claim under the NRS). Thus, the undersigned respectfully finds that Plaintiffs have sufficiently pled a claim under the NRS.

### ii. Fraud Claim as to Kindt

Plaintiffs argue that Kindt, as an Officer of NTI-NY, was obligated to provide material information to shareholders such as Plaintiffs, who reasonably relied on his representation regarding the financial state of the company. (DE 76-1 at 15.) And although they were entitled to an inspection of the books and records as shareholders[5], they failed to allow Plaintiffs to do so. (*Id.*) Plaintiffs further posit that Kindt possessed a duty to disclose material information to them but failed to disclose any information about the loans to Plaintiffs. (*Id.*)

In order for plaintiffs to prevail on a fraud claim, they must prove five elements: "(1) a false representation, (2) the defendant's knowledge or belief that the representation is false, (3) the defendant's intention to induce the plaintiff's reliance, (4) the plaintiff's justifiable reliance, and (5) damages." *Nev. State Educ. Ass'n v. Clark Cnty. Educ. Ass'n*, 482 P.3d 662, 675 (Nev. Sup. Ct. 2021) (citing *Bulbman, Inc. v. Nev. Bell*, 108 Nev. 105, 110-11, 825 P.2d 588, 592 (Nev. 1992)).

---

[5] Nev. Rev. Stat. Ann. ¶ 78.105 (2) (denoting how stockholders can obtain records for a corporation).

When a party that owes a fiduciary duty "fails to full his obligations thereunder, and does not tell the other party of his failure, his omission constitutes constructive fraud…." *Golden Nugget v. Ham*, 95 Nev. 45, 49 (Nev. 1979).

Under the Nevada Rules, fraud must be alleged with particularity and intent can be alleged generally. *See* Nev. R. Civ. P. 9(b); *Havas v. Alger*, 461 P.2d 857, 860 (Nev. 1969) ("Fraud is never presumed; it must be clearly and satisfactorily proved."). This means that plaintiff must state the time, place, persons involved, and nature of the fraud in the pleading. *Brown v. Kellar*, 636 P.2d 874, 874 (1981).

Plaintiffs have done just that. There are several detailed descriptions of material misrepresentations or omissions made to Plaintiffs in the SAC (DE 57):

- Kindt partially caused at least $1.5 million of the corporation's cash to be transferred which had gone to his personal benefit directly or to a business entity he owned or controlled. (DE 57 at ¶ 53.) Specifically, these funds were used to help NTI affiliates and NTI-NY funds of $220,000 were sent to Kindt for "expense" and loan payments. (*Id.*)

- Defendants opened up bank accounts in the Corporation's name without telling the Plaintiffs, depositing monies that belonged to the Corporation into these concealed accounts. (*Id.* at ¶ 57.)

- Defendants failed to disclose to Plaintiffs, including Josephine who was also a Director, information about these fraudulent transfers in status and management calls regarding business operations. (*Id.* at ¶ 58.)

- Instead, Defendants repeatedly told Plaintiffs that NTI-NY was "doing great." (*Id.*) Plaintiffs detrimentally relied on these falsities. (*Id.* at ¶ 136.)

- Although Plaintiffs repeatedly demanded access to the books and records, they were prevented from gaining access to this information because Defendants have failed and refused to grant these requests. (*Id.* at ¶¶ 65, 179.)

- Kindt accused Plaintiffs of committing unlawful acts, stealing from the corporation, and engaging in a scheme and directing Josephine to stop communicating with NTI's customers. (*Id.* at ¶ 69-70.)

- Finally, Kindt sent an email in August 2021 to a long-time customer of their claiming falsities like Josephine breached her fiduciary responsibilities to the Corporation. (*Id.* at ¶ 71.)

- When Plaintiffs inquired about the services performed for Delta and where payments from Delta were deposited, Jacobi intentionally misrepresented to Plaintiffs that NTI substituted the NTI-NY bank account which was rightfully NTI's; however, this was not the case—Defendants deposited Delta revenue into an NTI bank account. (*Id.* at ¶ 97.) However, the NTI affiliates did not earn this money nor did they have a contractual relationship with Delta. (*Id.* at ¶ 98.) From the Delta transfers alone, over $2 million were deposited into NTI's account. (*Id.* at ¶ 100.)

- Kindt received $220,000 for expense reports that he never created or provided to Plaintiffs. (*Id.* at ¶¶ 105-08.)

- Gleich and Kindt used NTI-NY's good credit status to obtain a $365,000 loan from Newco Capital Group VI LLC and assets of NTI-NY's were used as collateral in the event of a default without any approval from or notice to the Plaintiffs. (*Id.* at ¶¶ 111-12.) Once the Newco loan proceeds reached NTI-NY's bank account, $245,000 worth of the loan was transferred to NTI's bank account. (*Id.* at ¶ 113.) NTI-NY, Kindt and others defaulted on the loan resulting in an action of Newco against NTI-NY. (*Id.* at ¶ 114.) Gleich and Kindt arranged for NTI-NY to make the payments on this loan, although NTI-NY received no benefit from it, and so that Gleich and Kindt could weasel their way out of paying for the loan themselves. (*Id.* at ¶¶ 115-16.)

- Other fraudulent transfers include: 11 debits totaling more than $43,000, providing no benefit to NTI-NY and debits for car insurance to an unrelated entity named Alcocer, Inc. (*Id.* at ¶¶ 120-21, 124.)

Plaintiffs allege that they detrimentally relied on Defendant's representations that the company was "doing great" all while Plaintiffs' own revenue was "being depleted." (*Id.* at 16.) In its pleadings and exhibits, Plaintiffs have provided several pages of records demonstrating in detail the time, date, amount, and bank account of the fraudulent transfers. (DE 76-1 at 4; DE 76-4.); *see Bd. of Trs. V. Dunlap*, No. 2:18-cv-02163-JAD-VCF, 2019 U.S. Dist. LEXIS 219433, at *4-5 (Nev. Dec. 18, 2019) (finding that defendant intended to induce plaintiffs to rely on the fraudulent statements in order to get a higher pension benefit; they did justifiably rely on his

statement because he said he certified a statement under the penalty of perjury; and this reliance on the misrepresentation caused a disbursement of the pension benefits).

The undersigned concludes that Kindt had a duty to disclose the material information to Plaintiffs because of the relationship that existed between him and them.   *See Mackintosh v. California Fed. Sav. & Loan Ass'n*, 935 P.2d 1154, 1156 (Nev. 1997) (finding a special relationship existed between the parties and defendant breached the duty to disclose).   Instead, he failed to disclose information about the transfers to the Plaintiffs which provided no benefit to NTI-NY.   And, all of Plaintiffs' actions in securing business for NTI-NY was for the betterment of the company, yet the company never retained that revenue because money was constantly being siphoned out of its own accounts.   (*Id.* at ¶¶ 131-32.)

In reviewing the ample evidence before the undersigned demonstrating Kindt's fraudulent conduct, Plaintiffs have established fraud with the required particularity.

### iii.   Breach of Fiduciary Duty against Kindt

Plaintiffs allege that Kindt is a Director of NTI-NY who thus owes Plaintiffs a fiduciary duty of good faith and fair dealing and loyalty regarding the operations and management of NTI-NY.   (DE 76-1 at 16.)   However, Kindt breached this duty by "orchestrating fraudulent transfers, otherwise mistreating Plaintiffs, and by misdirecting corporate opportunities and over encumbering NTI."   (*Id.*)

"[A] breach of fiduciary duty claim seeks damages for injuries that result from the tortious conduct of one who owes a duty to another by virtue of the fiduciary relationship."   *Stalk v. Mushkin*, 199 P.3d 838, 843 (Nev. 2009).   "In Nevada, a claim for breach of fiduciary duty has three elements: (1) existence of a fiduciary duty; (2) breach of the duty; and (3) the breach

proximately caused the damages." *Klein v. Freedom Strategic Partners, LLC*, 585 F. Supp. 2d. 1152, 1162 (D. Nev. 2009).

"Directors have certain fiduciary obligations to the corporation and to its shareholders, including a duty of care and a duty of loyalty." *Rapaport v. Soffer*, No. 2:10-cv-935-MMD-RJJ, 2012 U.S. Dist. LEXIS 90324, at *14 (D. Nev. June 29, 2012) (citing *Horwitz v. Southwest Forest Industries, Inc*., 604 F. Supp. 1130, 1134 (D. Nev. 1985). "Nevada law presumes that the acts of corporate directors are honest and in the best interests of the company." *Id*. (citing NRS § 78.138 (codifying the business judgment rule)).

Here, there was clearly a fiduciary duty from a director to shareholder and undoubtedly a breach of that duty when Kindt arranged these transfers and took away business from Plaintiffs, and ultimately damaged the company to the point where it became insolvent. (DE 57 at ¶ 191.) And as stated above, Kindt did in fact engage in intentional misconduct, further supporting the notion that Kindt breached his fiduciary duty owed to Plaintiffs.

Turning to the business judgment rule, it cannot be said that Kindt's actions were carried out to assist NTI-NY. In fact, his actions demonstrate the complete opposite—for example, when taking out the NewCo loan and subsequently defaulting on the loan, NTI-NY was left with paying the bill for a loan its own shareholders had no knowledge of.

Accordingly, the undersigned concludes that the SAC sufficiently pleads that Kindt breached his fiduciary duty as a director to the Plaintiffs.

### iv.    Breach of Duty of Loyalty and Confidentiality against Kindt

Plaintiffs also allege that Kindt owed Plaintiffs a duty of loyalty in which he could not compete with NTI-NY and personally benefit himself. (DE 76-1 at 17.)

"To demonstrate a breach of the duty of loyalty, a plaintiff may show that a director acted in bad faith or self-interest to cause the plaintiff damages." *In re Newport Corp. S'holder Litig.*, 507 P.3d 182 (Nev. Mar. 30, 2022). "The duty of loyalty requires the board and its directors to maintain, in good faith, the corporation's and its shareholders' best interests over anyone else's interests. To hold a director or officer individually liable, the shareholder must prove that the director's breach of his or her fiduciary duty of loyalty involved intentional misconduct, fraud or a knowing violation of law." *Giudici v. Gianoli*, No. CV17-01644, 2021 Nev. Dist. LEXIS 1492, at *30 (D. Nev. June 10, 2021); NRS § 78.138(7)(b). Directors are required to maintain the corporation's and the shareholders' best interests over anyone else's, including their own. *Shoen v. SAC Holding Corp.*, 137 P.3d 1171, 1178 (Nev. 2006).

Kindt harmed the company by benefiting himself or other entities, instead of focusing on the success of NTI-NY. (DE 57 at ¶ 211.) In arranging for fraudulent transfers, using NTI-NY's credit status to get a loan of which was no benefit to NTI-NY and then defaulting on the loan which resulted in a judgment against NTI-NY, and taking business away from NTI-NY, he failed to show that they maintained the corporation's best interests. (*Id.* at ¶ 213.)

Further within the duty of loyalty, comes a duty of confidentiality, in which "directors are required to keep confidential, but not to disclose or misuse any information that they receive in their capacity as directors." Legal Info. Inst., *Duty of Loyalty*, https://www.law.cornell.edu/wex/duty_of_loyalty (last updated July 2022.)

Plaintiffs also allege that Kindt had a duty to keep the records confidential but breached it when he used the company's credit to receive a loan that had no actual benefit to the company, causing NTI-NY to sustain damages. (DE 76-1 at 17.) This amounts to a breach of Kindt's duty, as a director, to keep business records confidential.

Accordingly, the undersigned concludes that Plaintiffs have sufficiently demonstrated that Defendant breached his duty of loyalty owed to Plaintiffs.

### v.    Tortious Interference with Prospective Economic Advantage/Unfair Competition against Kindt

Plaintiffs allege that Kindt interfered with Plaintiffs' future business because Kindt "alter[ed] established service agreements with NTI-NY's customers and by arranging customer payments to be re-directed." (DE 76-1 at 18.) Plaintiffs allege this conduct is unlawful because it constitutes unfair competition. (*Id.*)

To prevail on a claim for tortious interference, a plaintiff must show: (1) the existence of a prospective contractual relationship with a third party; (2) defendant's knowledge of this relationship; (3) the intent to harm plaintiff by preventing the relationship; (4) the absence of privilege or justification by defendant; and, (5) actual harm to plaintiff caused by defendant's conduct. *In re Amerco Derivative Litig.*, 252 P.3d 681, 702 (Nev. 2011).

As a director of the company, Kindt had knowledge of NTI-NY's business operations. Thus, he knew of the relationships between NTI-NY and its customers yet initiated conversations with these customers and diverted them away from continued relationships with NTI-NY. (DE 57 at ¶ 227.) And the intent to harm Plaintiffs is evident from its disparaging words uttered to other customers. (*Id.* at ¶ 71.)

Further, in the Amended Complaint, Plaintiffs allege that Kindt "intentionally blurred the distinction between NTI-NY and NTI so as to deceive customers and misdirect business to NTI, NTI affiliates and away from NTI-NY." (*Id.* at ¶ 59.) Specifically, NTI scheduled secret meetings with representatives of other airlines which are customers of NTI-NY with the intention of taking NTI-NY's customers as their own. (*Id.* at ¶ 60.) Defendants' plan came to fruition when one of the customer-airlines acted on Defendant's scheme and began working with

26

an entity controlled by Gleich and NTI. *(Id.* at ¶ 61.)  And, NTI employee Wills solicited NTI-NY customers for NTI under the guise of an NTI message recording, inducing customers to believe that the number they were being connected to was NTI—but it was not.  (*Id.* at ¶¶ 62-63.)

Thus, the undersigned finds that Plaintiffs have sufficiently alleged tortious interference and unfair competition.

###### vi.      Conversion against Kindt

Plaintiffs allege that Kindt converted the company's assets which Plaintiffs had the right to possess but were diverted to both NTI and Kindt unbeknownst to Plaintiffs.  (DE 76-1 at 17.)

"A conversion occurs whenever there is a serious interference to a party's rights in his property." *Bader v. Cerri*, 609 P.2d 314, 317 (Nev. 1980) overruled on other grounds by *Evans v. Dean Witter Reynolds, Inc*., 5 P.3d 1043 (Nev. 2000). It "is a distinct act of dominion wrongfully exerted over personal property in denial of, or inconsistent with, title or rights therein or in derogation, exclusion or defiance of such rights." *Putze v. Johnson*, No. A-17-756018-C, 2018 Nev. Dist. LEXIS 2863, at *22-23 (Oct. 17, 2018).  "[C]onversion generally is limited to those severe, major, and important interferences with the right to control personal property that justify requiring the actor to pay the property's full value." *Edwards v. Emperor's Garden Rest*., 130 P.3d 1280, 1287 (Nev. 2006).

"To prevail on a claim for conversion under Nevada law, a plaintiff must show: (1) defendant committed a distinct act of dominion wrongfully exerted over plaintiff's personal property; and (2) the act was in denial of, or inconsistent with, plaintiff's title or rights therein; or (3) the act was in derogation, exclusion, or defiance of plaintiff's title or rights in the personal property." *Albrecht Invs. United States LLC v. Co. v.*, No. A-17-755449-C, 2019 Nev. Dist.

LEXIS 2681, at *14-15 (2019) (citing *Evans v. Dean Witter Reynolds, Inc.*, 5 P.3d 1043, 1048 (Nev. 2000)).

The assets were Plaintiffs' yet Defendants intentionally took them from Plaintiffs for Defendants' own use and benefit or for entities they controlled.  (DE 57 at ¶¶ 205-07.) Defendants' acts were inconsistent with or otherwise in exclusion of Plaintiff's rights or title because they had no knowledge or consent of the transfers, and even when asked about them, Defendants ignored Plaintiffs.  *Lopez v. Corral*, Nos. 51541, 51972, 2010 Nev. LEXIS 69, at *18 (Nev. 2010) ("Lopez clearly had the intent to deprive Corral of at least some of the funds for an indeterminate time….[T]he district court could have reasonably inferred that Lopez wrongfully exerted dominion over Corral's money, which was in derogation of Corral's rights in the property.")

Accordingly, the undersigned finds that the SAC sufficiently alleges conversion against Kindt.

**vii.    Conspiracy against Kindt**

Plaintiffs assert that Kindt conspired to convert NTI-NY's asserts to Plaintiffs' detriment. (DE 57 at 18.)  Specifically, Kindt received wire transfers of $220,000 for no legitimate reason. (*Id.*)

Nevada recognizes a claim of civil conspiracy.  To successfully prevail on a claim of conspiracy, plaintiffs must show that two or more persons intended to accomplish an unlawful objective to harm another and damages resulting from those acts.  *See Guilfoyle v. Olde Monmouth Stock Transfer Co.*, 335 P.3d 190, 199 (Nev. 2014).  And because this claim is borne out of the fraud-based claims, it is subject to the heightened pleading requirements under NRCP 9(b).  *See Davenport v. GMAC Mortg.*, No. 56697, 2013 WL 5437119, at *2 (Nev. Sept. 25,

2013) (finding that plaintiff's claims for fraud, consumer and constructive fraud, and civil conspiracy must satisfy the standard in NRCP 9(b)).

Plaintiffs have successfully pled this claim demonstrating that Defendants committed fraud by, for example, colluding to make NTI-NY liable for a loan it did not know about and engaging in conversations with NTI-NY's customers, depriving them of retained or future business. *Cf. Guilfoyle*, 335 P.3d at 199 (finding that plaintiff failed to produce evidence showing an agreement to harm plaintiff); *Consol. Generator-Nevada, Inc. v. Cummins Engine Co.*, 971 P.2d 1251, 1256 (Nev. 1998) (same). And, Plaintiffs have alleged that Defendants shut Plaintiffs out from material information in meetings, further demonstrating an agreement to act on the fraudulent transfers without their knowledge. Defendants' actions only suited themselves, not the company, rendering the company nearly insolvent once they completed their scheme. (DE 57 at ¶ 232.)

Thus, Plaintiffs have sufficiently alleged with particularity that Kindt conspired with others to carry out his plan.

### viii.    Unjust Enrichment against Defaulting Defendants

Plaintiffs allege that both Defendants were each unjustly enriched yet Plaintiffs received nothing. (DE 76-1 at 18.) Specifically, Defendants kept the company's benefits and knew they belong to the company and failed to return the benefits to those they belonged to. (*Id.* at 19.) And, Plaintiffs allege they have showed evidence of unjust enrichment in the receipt of $220,000 to Kindt. (*Id.*)

Claimants must show that the other party "retained money or property of [the claimant's] against fundamental principles of justice or equity and good conscience." *Asphalt Prod. Corp. v. All Star Ready Mix, Inc.*, 898 P.2d 699, 701 (Nev. 1995). Specifically, a claimant must show (1)

29

it conferred a benefit on the other party; (2) the other party appreciated that benefit; and (3) the

other party accepted and retained that benefit such that it would be inequitable to do without

repayment. *Topaz Mut. Co. v. Marsh*, 839 P.2d 606, 613 (Nev. 1992).

Here, the SAC alleges a plausible claim that the Defaulting Defendants were unjustly

enriched. As just one example, Kindt bought a property worth $287,500 around July 2021 in

Nevada with the stolen monies. (DE 57 at ¶ 137.) Defaulting Defendants received benefits as a

result of NTI-NY's success, without having ever raised that revenue themselves. (*Id.* at ¶ 248.)

And, Kindt received $220,000 from bank account transfers without providing a penny back to

NTI-NY. (*Id.* at ¶ 249.); *cf Bevilaque v. Dramise,* NO. A-11-640026 DEPT. NO. XIII, 2014

Nev. Dist. LEXIS 3743, at *35 (2014) (finding that defendant did not "wrongfully divert

resources to [] himself, [his] family, and other entities"). And as discussed above, Defendants

have diverted millions of dollars from NTI-NY's either via transfer of funds fraudulently, access

to NTI-NY's good credit in obtaining a loan or taking away long-standing customers from NTI-

NY. *See supra* pp. 6-7. These are demonstrations of the funds that Defendants would be

holding onto undeservedly when Plaintiffs were the ones who raised all the revenue for the

company, yet Defendants get to reap the benefits.

### E. Damages

Plaintiffs allege that it has documented all necessary evidence of the fraudulent transfers

for which Gold Coast is entitled as a 51% owner of the funds and ultimately requests damages as

a result of Defaulting Defendants' actions. (DE 76-1 at 2, 19.) "Allegations of liability are

deemed admitted upon default; allegations of damages are not." *Antoine v. Brooklyn Maids 26,

Inc*., 489 F. Supp. 3d 68, 90 (E.D.N.Y. 2020). "Rather, a court must ensure that there is an

adequate basis for the damages sought by a plaintiff before entering judgment in the amount

demanded." *Id*; *see also Century 21 Real Est. LLC v. Team Mates Realty Corp.,* No. 07-cv-4134 (NG) (VVP), 2009 WL 910655, at \*5 (E.D.N.Y. Feb. 18, 2009), report and recommendation adopted, 2009 WL 890561 (E.D.N.Y. Mar. 31, 2009) (noting that parties must provide "evidentiary proof" of damages to establish the amount).

  i.     **Joint and Several Liability as to Defaulting Defendants**

Here, Plaintiffs request damages against Defaulting Defendants for the monies stolen from (1) the NTI-NY and Delta contract; (2) various NTI-NY and NTI bank transfers; and (3) the NewCo Loan transfers.  (DE 76-1 at 2.)

As proof of their entitlement to damages, Plaintiffs provide copies of bank records detailing all of the fraudulent transfers.  (*See* DE 76-4.)  Plaintiffs allege that Defaulting Defendants failed to turn over the following to Plaintiffs: (1) $2,073,923.64 in revenue from the contract between NTI-NY and Delta airlines (DE 57 at 21-22); (2) monies resulting from twenty-five (25) different NTI-NY fraudulent bank account transfers to NTI's account in the amount of $871,731.66 (*id.* at 19-20); and (3) NewCo Loan transfers and loan repayments totaling $328,300, which was a high-risk loan and for which Gleich and Kindt listed NTI-NY as an obligor pledged other NTI-NY assets as collateral.  (DE 57 at ¶ 111; DE 76-1 at 19.)  Plaintiffs have reduced this total amount with monies transferred from NTI to NTI-NY ($1,866,748.83), bringing the total amount of fraudulent transfers to $1,407,206.47.  (*Id.* at 19-20.)  However, because Plaintiff Gold Coast is a 51% owner, it is entitled to 51% of the total amount of fraudulent transfers, or $717,675.30.[6]  (*Id.*)

---

[6] Note that Plaintiffs originally requested $714,640.81 but there were some discrepancies in their calculations.  For instance, Plaintiffs calculate the NTI-NY bank account transfers at $865,731.66, slightly below the Court's calculation.  (DE 76-at 19.)

Specifically, as the basis for the requested damages, Plaintiffs point to the deprivation of revenue, piling up of debt and judgments against it, tarnishing of reputation and ability to maintain its business, and depletion of the company's and Plaintiffs' assets.  (DE 57 at ¶ 135.)

However, Plaintiffs appear to be alleging that NTI and Kindt are jointly and severally liable for the fraudulent activity.  Defendants can be held jointly and severally liable where two or more tortfeasors cause an injury through "combined or concurrent tortious conduct."  *Willet v. Vitek, Inc.*, 139 B.R. 723, 725 (Nev. 1992) (citing *Buck by Buck v. Greyhound Lines,* 783 P.2d 437, 442 (Nev. 1989).

Defaulting Defendants have not asserted any defenses barring a finding of joint and several liability here.[7]  Thus, both NTI and Kindt should be jointly and severally liable in this instance because the fraudulent transfers occurred at the behest of Kindt and through NTI's account.  As Director of NTI-NY, Kindt played a significant role in orchestrating and facilitating these fraudulent transfers and, as majority owners of the company, Plaintiffs are entitled to 51% of the funds siphoned out of NTI-NY and into NTI's accounts.  *See Spencer v. Stafford*, No. 2:19-cv-01592 (RFB) (EJY), 2021 U.S. Dist. LEXIS 36316, at *9 (D. Nev. Feb. 26, 2021) (holding multiple individual defendants and companies jointly and severally liable and finding that company consented to the granting of this motion by failing to respond); *SEC v. Bahgat*, No. 17-CV-971, 2023 U.S. Dist. LEXIS 86433, at *26 n.5 (W.D.N.Y. May 17, 2023) (holding managing member of corporation jointly and severally liable for disgorged profits from firm because he "collaborated with and rank[ed] high in the firm").

---

[7] Unless Plaintiff is at fault, joint and several liability applies.  *See Buck*, 783 P.2d 437 (Nev. 1989); *see also* Nev. Rev. Stat. § 41.440.  Nothing in the record before the Court would provide an indicia of fault on Plaintiff's part.

Further, Plaintiffs are not allowed to recover from Defaulting Defendants *separately* for the *same* injury. *See Elyousef v. O'Reilly & Ferrario, LLC*, 245 P.3d 547, 549 (Nev. 2010) ("[A] plaintiff can recover *only once* for a single injury even if the plaintiff asserts multiple legal theories.") (emphasis added).  Since NTI and Kindt would both be responsible for the damages, Plaintiffs can collect damages from *either* NTI or Kindt. *See Willett*, 139 B.R. at 725.

Thus, Plaintiffs have submitted sufficient documentation detailing their entitlement to 51% of the fraudulent transfers.  Accordingly, the undersigned recommends a finding that Defaulting Defendants are jointly and severally liable for damages amounting to $717,675.30.

ii.    **Damages Against Kindt**

In addition to the damages requested jointly and severally from Defaulting Defendants, Gold Coast also states it is *separately* and independently entitled to 51% of Kindt's fraudulent $220,000 transfer to himself for "expense and loan pay" and personal use, or $112,200.  (DE 57 at ¶¶ 53, 105-108.)  As proof of these fraudulent transfers, Plaintiffs have provided copies of bank records denoting these deductions from NTI-NY's account.  (DE 76-4.)  This is adequate to support Plaintiffs' request.  Thus, the undersigned respectfully recommends an award of $112,200 in damages against Kindt alone.

## VI.    <u>CONCLUSION</u>

For the reasons stated above, the Court finds that Plaintiffs have demonstrated liability and met their burden as to damages.  Accordingly, the undersigned respectfully recommends that the Court enter default judgment against NTI and Kindt and that Defaulting Defendants should be held jointly and severally liable in the amount of $717,675.30, and an additional amount of $112,200 against Kindt individually.[8]

---

[8] The Court notes that the motion for default judgment did not request either interest or attorney's fees.

## VII.    OBJECTIONS

A copy of this Report and Recommendation is being electronically served on counsel. Plaintiffs' counsel is directed to serve a copy on the Defaulting Defendants. Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report. 28 U.S.C. § 636(b)(1) (2006 & Supp. V 2011); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the district judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this Report and Recommendation either by the District Court or the Court of Appeals. *Thomas v. Arn*, 474 U.S. 140, 145 (1985) ("a party shall file objections with the district court or else waive right to appeal"); *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) ("failure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision"); *see Monroe v. Hyundai of Manhattan & Westchester*, 372 F. App'x 147, 147–48 (2d Cir. 2010) (same).

Dated: Central Islip, New York
August 1, 2023

RESPECTFULLY RECOMMENDED,

/s/ *James M. Wicks*

JAMES M. WICKS
United States Magistrate Judge

34